# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**BARRY DAVIS,**

      **Petitioner,**

**v.**                                                                    **Case No. 6:07-cv-1954-Orl-35KRS**

**SECRETARY, DEPARTMENT OF**
**CORRECTIONS, et al.,**
**Respondents.**

_____/

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a reply to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 7). Petitioner filed a reply to the response (Doc. No. 14).

Petitioner alleges seven claims for relief in his habeas petition: 1) he was improperly resentenced by a successor judge without a showing of necessity; 2) the trial court erred by allowing the introduction of irrelevant police testimony regarding unsolved homicides; 3) appellate counsel was ineffective for failing to argue the correct law with regard to issue two raised on direct appeal; 4) trial counsel was ineffective for failing to raise the issue of judicial bias; 5) trial counsel was ineffective for failing to object to the use of a successor judge and not preserving the issue for appellate review; 6) trial counsel was ineffective for failing to challenge the introduction of police testimony; and 7) the imposition of a life

sentence was arbitrary, capricious and irrational.

## I.   *Procedural History*

A three-count second amended information was filed against Petitioner and another individual.   Petitioner was charged in counts two (robbery with a firearm) and three (burglary of a dwelling with an assault or battery).

Petitioner subsequently entered into a plea agreement in which, among other matters, he agreed to enter a plea of guilty to burglary of a dwelling with a weapon.   Under the agreement, the parties agreed to a sentence consisting of a "cap of 5 years" and "probation to follow[,] up to Court."   The trial court held a hearing on the plea and ultimately accepted it.   On December 19, 2000, Judge Warren Burk adjudicated Petitioner guilty of the crime and sentenced him to imprisonment for a term of 42 months, to be followed by probation for a term of 60 months.   Petitioner did not file a direct appeal.   Petitioner completed the full sentence of incarceration, and, on January 31, 2003, he was released to begin his term of probation.

On January 9, 2004, a probation officer submitted an amended affidavit of violation of probation ("VOP"), alleging that Petitioner had violated his probation by 1) committing the offense of possession of drug paraphernalia (violation of condition five), 2) leaving his approved place of residence without the knowledge or consent of the probation officer (violation of condition three), 3) committing another offense of possession of drug paraphernalia (violation of condition five), and 4) committing the offense of resisting arrest with violence (violation of condition five).   Petitioner filed an Admission of Violation of Probation/Community Control in which he admitted violating the conditions of his probation and acknowledged that he was on probation for the charge of burglary with an assault and

2

that the charge carried a total maximum penalty of life imprisonment.  Judge J. Preston Silvernail[1] held a VOP hearing thereon in which Petitioner pled guilty to violating the conditions of his probation.  Judge Silvernail accepted the plea, finding that there was a factual basis for the plea and that Petitioner knowingly, freely, and voluntarily entered into the plea.

The trial court then began the sentencing proceedings and, over strenuous objection of counsel, allowed the State to present the testimony of Detective Ernie Diebel.  The central theme of Detective Diebel's testimony was Petitioner's alleged knowledge of facts related to other unresolved homicide investigations.  After Detective Diebel's testimony, the trial court determined that it would be better to hold a separate sentencing hearing, and it reset the case.

The sentencing hearing was held approximately three months later.[2]  Petitioner's criminal history was discussed at the sentencing hearing.  From December 29, 1984, through April 29, 1993, he had been arrested twelve times for various offenses, including burglary, battery, trespass, and drug charges.  From July 25, 1993, through December 12,1999, he had been arrested approximately twenty more times for various offenses, including battery, assault, trespass, resisting arrest, retail theft, tampering with physical evidence, and drug charges.  He was convicted of various crimes and was sentenced to

---

[1]Judge Silvernail was handling the violation of probation because he was the presiding judge over the charges that precipitated the VOP.  *See* Appendix A, Transcript of Proceedings held on September 23, 2004, at 17.

[2]The State sought to have Detective Diebel testify again at the sentencing hearing, and Petitioner's counsel objected.  The trial court did not directly address the matter, but Detective Diebel did not testify at the sentencing hearing.

probation and incarceration of various lengths of time.

The trial court adjudicated Petitioner guilty of violating the terms of his probation and the underlying offense and sentenced him to life imprisonment as to the burglary of a dwelling with an assault or battery count.  Petitioner appealed, and the state appellate court affirmed *per curiam*.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, which was denied.  Afterwards, Petitioner was  permitted to amend his original motion to present additional claims, and the trial court denied the additional claims.  Petitioner appealed the denial and later filed a motion to voluntarily dismiss his appeal, which was granted by the state appellate court.

Petitioner next filed a second Rule 3.850 motion, which was denied as successive. The state appellate court affirmed the denial *per curiam*.  Finally, Petitioner filed a petition for writ of habeas corpus with the state appellate court, which was denied.

## II.    **Legal Standards**

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the

holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[3] *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing

---

[3]Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

evidence.  *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B.    Standard for Ineffective Assistance of Counsel**

In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  The first prong of the *Strickland* test requires that the defendant demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  The second prong of the *Strickland* test requires the defendant to show that the deficient performance prejudiced the defense.  *Id*. at 687.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance.  Id. at

**C.    Exhaustion and Procedural Default**

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A)    the applicant has exhausted the remedies available in the courts of the State; or

6

      (B)    (i)    there is an absence of available State corrective process; or

            (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

7

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court.  Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id*.; *see also Henderson*, 353 F.3d at 898 n.25 ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Actual innocence means factual innocence, not legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not

presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.   Analysis

### A.   Claim One

Petitioner contends in claim one that he was improperly resentenced by a successor judge without a showing of necessity.  This claim was raised on direct appeal.

This claim is without merit.  It is appropriate for a successor judge to preside over probation violation proceedings even though the successor judge was not the judge who accepted the plea to the original criminal charges.  *Scott v. State*, 909 So. 2d 364 (Fla. 5th DCA 2005).  This is particularly true when the successor judge was more familiar with the issue of the alleged probation violation than the judge who accepted the original plea.  *Id*. *Id*. at 369.  Thus, this claim is denied.

### B.   Claim Two

Petitioner argues that the trial court erred by allowing the introduction of irrelevant testimony of the police officer at sentencing regarding unsolved homicides.  This claim was raised on direct appeal, and, as noted above, the state appellate court affirmed *per curiam*.[4]

In the present case, after the trial court accepted Petitioner's plea to the violation

---

[4]In discussing this claim on direct appeal, Petitioner cursorily mentioned that his "due process rights" had been violated.  Arguably, this general allegation of the denial of the right to "due process" did not fairly present a claim that specific constitutional rights were violated. *McMeans v. Brigand*, 228 F.2d 674, 681 (6th Cir. 2000).  As such, this claim would be procedurally barred.  However, in an abundance of caution, the Court will address the merits of the claim.

of probation and found that Petitioner knowingly, freely, and voluntarily entered the plea, it began the sentencing proceedings and allowed the State to present the testimony of Detective Diebel, who testified that Petitioner had refused to divulge information about two separate homicides the Detective was investigating. (Appendix A, Transcript of Plea Hearing at 15.) Detective Diebel spoke with Petitioner on three separate occasions about the homicides, and Petitioner stated to him that he had direct knowledge about one of the homicides but refused to elaborate. *Id*. at 14-15. Petitioner was not a suspect in any of the homicides, but Petitioner had "direct knowledge." *Id*. at 15. This testimony was heard over the Defendant's strenuous objection. *Id*. at 18. The trial court recessed the hearing and set the final sentencing hearing over for a later date.

According to Petitioner, Detective Diesel's testimony was prejudicial and irrelevant to the VOP charges and should not have been considered at sentencing. Initially, the Court notes that "federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Nichols v. Estelle*, 556 F.2d 1330, 1331 (5th Cir. 1977) ("federal courts do not review a state's failure to adhere to its own sentencing procedures . . . ."). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" *Branan*, 861 F.2d at 1508 (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976)). Since this claim is based exclusively on state law issues that are merely "couched in terms of equal protection and due process," it must be denied, as there is simply no constitutional injury for this Court to address. *See Willeford*, 538 F.2d at 1198.

10

In addition, Petitioner has not shown that, under Florida law, the trial court erred in allowing the testimony of Detective Diebel or that in imposing the sentence.  At the VOP hearing, Petitioner admitted that he had violated certain conditions of his probation and acknowledged that he understood the maximum possible penalty in the case, which was life imprisonment.  (Appendix A, Transcript of Plea Proceedings held on June 17, 2004, at 11-12.)  The trial court then began a sentencing hearing, which included the testimony of Detective Diebel.  The trial court is obligated to entertain submissions and evidence submitted by the parties that are relevant to the sentence.  *See* Fla. R. Crim. P. 3.720(b).  Petitioner has not established that the trial court erred in receiving the testimony of Detective Diebel.  *See Johnson v. State*, 962 So. 2d 394, 396 (Fla. 2d DCA 2007) (hearsay evidence is admissible in a probation revocation hearing); *Cameron v. State*, 943 So. 2d 938 (Fla. 4th DCA 2006) (the trial court may rely on hearsay testimony at a sentencing hearing).

The sentencing hearing was reset to a later date, and the trial court eventually sentenced Petitioner to life imprisonment.  In the original plea agreement, Petitioner acknowledged that probation could be a part of his sentence and that, in the event he failed to comply with the terms of the plea agreement, the trial court could then sentence him to the statutory maximum penalty for the crime to which he pled guilty:

> I understand and agree that if I fail to comply with any of the conditions set forth above I will have breached my plea agreement.  In that event I will not be allowed to withdraw my plea and the Court may sentence me to any sentence authorized by law for the offense(s) to which I have pled, including the statutory maximum penalty for each crime to which i have pled under this agreement.

(Appendix A, Plea Agreement at 2.)   The maximum penalty in this case was life

11

imprisonment.[5]

In addition, upon revocation of Petitioner's probation, the trial court was free to impose any sentence it may have originally imposed before placing him on probation.  *See Hill v. State*, 927 So. 2d 1047 (Fla. 2d DCA 2006) (upon revocation of a defendant's probation, a trial court is "free to impose any sentence it may have originally imposed before placing him on probation."); § 948.06(2)(b), Fla. Stat. (2004) (providing that, upon revocation of probation, the trial court may "impose any sentence which it might have originally imposed before placing the probationer on probation").  Although the plea agreement had initially provided for a "cap of 5 years," under Florida law, "when a defendant pleads guilty pursuant to a plea bargain and the court places him on probation, if he violates his probation the court can sentence him to a term in excess of the provisions of the original bargain."  *See State v. Segarra*, 388 So. 2d 1017, 1018 (Fla. 1980); *see also Pagnotti v. State*, 821 So. 2d 466, 468 (Fla. 4th DCA 2002) (finding that a defendant who pled guilty to various counts related to sexual activity with a child, was sentenced to a total of nine years prison followed by five years probation, and later violated the terms of his probation, could be sentenced upon revocation of probation to twenty years in prison, since the trial court was permitted to impose any sentence which it might have originally imposed before placing the probationer on probation); *Kinsler v. State*, 783 So. 2d 300 (Fla. 4th DCA

---

[5]Section 810.02(2)(a) provides as follows:

(2) Burglary is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender:

(a) Makes an assault or battery upon any person[.]

12

2001) (citation omitted) ("a defendant placed on probation pursuant to the terms of a plea agreement may be sentenced to a term in excess of the provisions of the original plea bargain upon violation and revocation of said probation.").

Further, Petitioner was represented by counsel at the hearing and admitted that he had violated his probation. Petitioner does not contend that he was prevented from challenging the allegedly improper testimony by Detective Diebel.  In fact, Petitioner's counsel conducted a cross-examination of Detective Diebel.   As such, his due process claim is meritless, and the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.   Thus, this claim does not warrant federal habeas relief under § 2254(d)(1).

Finally, even if it was erroneous to allow the testimony of Detective Diebel, Petitioner has not shown that the trial court relied on Detective Diebel's testimony in imposing the sentence.  The trial court had Petitioner's lengthy criminal history available for review and noted that Petitioner "was given ample opportunity to go down a street that enabled him to step away from his situation, but he hasn't managed to do that."   *See* Appendix A, Transcript of Proceedings held on September 23, 2004, at 8.  Under the circumstances, Petitioner has not demonstrated that the alleged error was prejudicial.

**C.     *Claim Three***

Petitioner claims that appellate counsel was ineffective for failing to argue the correct law with regard to issue two raised on direct appeal.

It is well established that a defendant has the right to effective counsel on appeal. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir.), *cert. denied*, 469 U.S. 956 (1984).

13

The standard for analyzing ineffective assistance claims is the same for trial and appellate counsel. *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987). The Eleventh Circuit has applied the Supreme Court's test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).

Issue two on direct appeal was as follows: the police officer's testimony that Petitioner was withholding information regarding unsolved homicides was not relevant to any charged violation and prejudiced the trial court's sentencing determination. Petitioner asserts that counsel "failed to apply the correct or applicable law to sufficiently argue the issue."

Petitioner does not specify the manner in which appellate counsel failed to apply the correct or applicable law. A review of the appellate brief reveals that counsel argued that the trial judge should not have considered testimony which was not relevant to the charged violation. (Appendix B, Initial Brief of Appellant at 10.) Appellate counsel's brief on this issue was comprehensive, thorough, and well-argued. Certainly, the record clearly evinces the thoroughness and reasonableness of appellate counsel's work. *Cf. Thomas v. Scully*, 854 F. Supp. 944 (E.D.N.Y. 1994) (the appellate brief submitted by counsel clearly showed the thoroughness of counsel's work). Consequently, Petitioner has not shown deficient performance on the part of appellate counsel or that he sustained prejudice.

## C.   *Claims Four, Five, Six, and Seven*

Petitioner avers as follows: trial counsel was ineffective for failing to raise the issue of judicial bias (claim four); trial counsel was ineffective for failing to object to the use of a

14

successor judge and not preserving the issue for appellate review (claim five); trial counsel was ineffective for failing to challenge the introduction of police testimony, which was inadmissible and prejudicial (claim six); and the imposition of a life sentence was arbitrary, capricious and irrational (claim seven).

These claims were raised in Petitioner's second Rule 3.850 motion, and they were denied by the trial court as successive.  The denial on procedural bar grounds was a correct application of Florida law.  In fact, Petitioner acknowledges in his reply (Doc. No. 14) that claims 4, 5, 6, and 7 "have not been fully exhausted."  *Id*. at 10.

Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has not shown the applicability of the actually innocent exception.  The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar.  Therefore, claims four, five, six, and seven are procedurally barred and denied.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Barry Davis is **DENIED,** and this case is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, a Certificate of Appealability is **DENIED** in this case.

15

**DONE AND ORDERED** in Chambers in Orlando, Florida, this 28th day of July 2010.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
sa 7/28
Counsel of Record
Barry Davis

16